UNITED STATES DISTRICT COURT                    c
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

CLEVELAND L. HARRIS,          CIVIL ACTION NO. 1:20-CV-00910
Plaintiff

VERSUS                        JUDGE DRELL

COMMISSIONER OF SOCIAL        MAGISTRATE JUDGE PEREZ-MONTES
SECURITY ADMINISTRATION,
Defendant

## REPORT AND RECOMMENDATION

Before the Court is Cleveland L. Harris's ("Harris's") appeal of the denial of Social Security disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits by the Commissioner of Social Security (the "Commissioner"). Because the ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision, the Commissioner's decision should be AFFIRMED, and Harris's appeal should be DENIED and DISMISSED WITH PREJUDICE.

## I.  Background

Harris filed an application for period of disability and DIB under Title II of the Social Security Act (the "Act") on June 20, 2018.  ECF No. 11 at 194.  He also protectively filed for SSI under Title XVI on June 6, 2018.  *Id.* at 189. Harris alleged a disability onset date of June 1, 2016, due to high blood pressure, degenerative disc disease ("DDD"), endplate sclerosis, vacuum disc phenomenon, lumbosacral junction, spurring present at the L5-S1 level, and shortness of breath.  ECF No. 11 at 213.

Harris's claims were initially denied by the Social Security Administration ("SSA") on October 16, 2018. *Id.* at 52, 54.

Harris's applications were heard before an administrative law judge ("ALJ") on August 14, 2019. *Id.* at 14. Harris appeared with Donald E. Boman, Sr., a vocational expert ("VE"). *Id.* He also appeared with attorney Amy Yeanri ("Ms. Yeanri"). *Id.* The ALJ denied Harris's claims on August 23, 2019. *Id.* at 14-23. The ALJ determined that Harris was not disabled under the Act, finding at step five of the sequential evaluation process that Harris is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *Id.*

On May 18, 2020, the Appeals Council denied Harris's request for review. The ALJ's August 23, 2019 decision became the final decision of the Commissioner. ECF Nos. 1 at 4, 11 at 5.

Proceeding *in forma pauperis*, Harris filed this appeal for judicial review. ECF No. 1. Harris asserts the that the Commissioner's decision was based on legal error and is not supported by substantial evidence. ECF No. 1 at 2. Specifically, Harris asserts the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence because he failed to properly weigh the opinion of treating physical therapist Jason Schuster ("Dr. Schuster"), PT, DPT, MTC. ECF No. 12 at 3.

A.    **Administrative Hearing**

At the August 14, 2019 administrative hearing, Harris testified that he completed up to the eighth grade and never obtained a GED. ECF No. 11 at 33. He attended, but did not complete, trade school for industrial electronic technology. *Id.*

He worked at Paragon Casino as a housekeeping supervisor for two and one-half to three years, beginning around 2013. *Id.* at 34. He supervised seven to thirteen employees. *Id.* He worked for Craft Solutions for approximately one month in 2016 for storm clean-up. *Id.* He did not work from approximately 2010 to 2012. *Id.* at 35. Before that, he worked at Allen's for three to four years as a canning machine operator. *Id.* at 35-36. He also worked for AutoZone for about a year as a parts technician and then a manager. *Id.* at 35.

Harris testified he was in a car accident around 2006. ECF No. 36-37. He was still able to work after the accident. *Id.* at 37. He started having problems with his back at the L5-S1, his hips, and shoulders. *Id.* Harris stated he has arthritis in his shoulder, which he complained of to the doctor treating him for his back. *Id.* at 37. He testified he was treated with maybe six months of acupuncture. *Id.*

Harris stated his back problem sometimes affects his ability to be on his feet. *Id.* Harris testified he is 6'2" and weighs 326 pounds. *Id.* at 38. He testified that his weight sometimes poses problems for him, causing him to get winded. *Id.* He has been encouraged to lose weight. *Id.* But he has problems doing the exercises because of his back. *Id.* Harris testified that the last time he saw the doctor, they set up therapy, but his insurance would not cover it. *Id.*

3

Harris testified he can stand at most maybe 30 minutes before taking a break. *Id.* Then he must sit down, and lie down, the rest of the time. *Id.* at 39. He can sit two hours depending on whether he takes his Trazodone, which he could go to sleep on. *Id.* He can still lift and carry things, but not long enough to hold a job. *Id.* He testified he was able to work for about six years with his back problem. *Id.* Pain is his biggest problem. *Id.* at 40. He experiences pain trying to get in and out of the bathtub or to get out of the bed. *Id.* About half the time he needs assistance. *Id.* He can dress himself except needs help getting on his shoes. *Id.* at 40-41. He has a cousin who helps him. *Id.* at 41.

Harris testified that he has no designated home. *Id.* Before he gave up his job, he owned a boat and a truck. *Id.* He also rented a nice house. *Id.* Now he stays with a mix of friends or family, anywhere from a few days to a few weeks. *Id.* at 41-42. He testified that, if he had a place, he could keep up with his own laundry and cook for himself. *Id.* at 42. He does not have a car and relies on other people for getting around. *Id.* He sold everything and has now run through his savings. *Id.* He uses Medicaid transportation to get to doctor's appointments. *Id.* at 42-43.

He does not take medication for pain. *Id.* at 43. Harris testified he saw Dr. John Fairbanks ("Dr. Fairbanks") for pain management. *Id.* He stated Dr. Fairbanks was supposed to prescribe him medication, but never did. *Id.* Harris stated he takes Tylenol, which helps. *Id.* He described his pain as sometimes 11 on a scale of 1 to 10. *Id.* Harris has tried his uncle's TENS machine, which helped. *Id.* at 43-44.

In a typical day, Harris spends his time sitting around. *Id.* He goes from standing up, to sitting down, to standing up – no position is more comfortable. *Id.* He lies down maybe sixty percent of the time. *Id.* Lying down is better than sitting up. *Id.* He can still use his hands but felt two hours would be a long time to try to do things like handling a gallon of milk and getting it out of the refrigerator. *Id.* at 45. His fingers get numb, and he would have a problem with holding anything. *Id.* He stated he has been told "it's something with the back, my nerves in my back." *Id.*

After his accident, his hip hurt but he was still able to work on it. *Id.* at 45-46. As time went on, it got worse. *Id.* at 46. He still has a problem with it. *Id.* He had acupuncture and his doctor told him they wanted to take a piece of his pelvic bone and fuse it to his back at the L5. *Id.* Harris testified he has not had the surgery because he is not stable in a home anywhere to have the operation. *Id.* Harris explained that he was told his hip problem was from his back problem. *Id.* at 46-47.

Harris's attorney also questioned him. *Id.* at 47. Regarding lying down about sixty percent of the time, Harris testified that whether he stays awake depends on if he takes his medication. *Id.* He testified he does not have any medication prescribed from the doctor. *Id.* He stated the only thing he takes is Tylenol or Ibuprofen. *Id.* Harris testified he sometimes has problems with raising his arms up high. *Id.* He stated sometimes his "shoulders feel like arthritis." *Id.*

The VE testified that Harris's past work consists of auto parts store manager, DOT[1] number 185.167-046, skill SVP level 7, light strength; director of housekeeping,

---

[1] Dictionary of Occupational Titles.

DOT number 187.167-046, skill SVP level 8, light strength; and canning machine operator, DOT number 920.685-078, skill SVP level 2, medium strength. *Id.* at 48.

The ALJ asked the VE to assume a hypothetical individual with Harris's age, education, and vocational background, limited to a range of sedentary work with the following non-exertional limitations: occasional climbing of ramp and stairs; never climbing ladders, ropes or scaffolds; frequent balancing; occasional stooping; frequent kneeling or crouching; occasional crawling; and no other limitations. *Id.* at 48-49. The ALJ asked the VE if, based on those limitations, whether that hypothetical individual could perform the demands of Harris's past work. *Id.* at 49. The VE testified that the hypothetical individual could not. *Id.*

The ALJ asked if there would be any other jobs in the national economy that a person with those limitations could perform. *Id.* The VE testified there are other jobs in the national economy that such an individual could perform. *Id.* The VE stated that the individual could work the following jobs: (1) a call-out operator, DOT number 237.367-014, SVP level 2, sedentary strength (5,240 jobs in the national economy); (2) a surveillance systems monitor, DOT number 379.367-010, SVP level 2, sedentary strength (6,379 jobs in the national economy); (3) a telephone information clerk, DOT number 237.367-046, SVP 2, sedentary strength (5,141 jobs in the national economy); and (4) an escort vehicle driver, DOT number 919.663-022, SVP 2, sedentary strength (23,137 jobs in the national economy). *Id.*

The ALJ asked the VE to assume further that the hypothetical individual at the sedentary level was able to sit six hours, but stand and/or walk only one hour in

an eight-hour workday. *Id.* He asked the VE whether that individual would be precluded from any of the jobs listed. *Id.* The VE testified that would eliminate sedentary work. *Id.* The VE testified that the specifications given do not conform to specifications for sedentary work. *Id.* at 50. The ALJ state he was not going to ask him a separate hypothetical and further inquired what is the employer's tolerance for off-task behavior and absenteeism in the national economy. *Id.*

The VE testified that the norm for off-task behavior is two, fifteen-minute breaks in an eight-hour shift. *Id.* If the person was taking more breaks on a consistent basis, they would let him go. *Id.* And the VE testified that the norm for absenteeism is one day per month, three days in a nine-day period. *Id.* The VE stated that if the individual was taking more days off on a consistent basis, they would be let go. *Id.* Harris's attorney had no follow-up questions. *Id.*

B. <u>ALJ's Findings</u>

To determine disability, the ALJ applied the five-step sequential process outlined in 20 C.F.R. §§ 404.1520(a), 416.920. The sequential process required the ALJ to determine whether Harris: (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Greenspan v. Shalala*, 38

F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (citing *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled.  Under the regulations, this means the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant can perform work in the national economy. *See Greenspan*, 38 F.3d at 237.

Here, the ALJ found Harris last met the insured status requirements of the Act through September 30, 2017. ECF No. 11 at 16.  He found that Harris had not engaged in substantial gainful activity since his alleged onset date of June 1, 2016. *Id.* In step two and three of the sequential evaluation, the ALJ determined that Harris suffered severe impairments of degenerative disc disease, osteoarthritis of the hips, obesity, and hypertension.  *Id.*  But the ALJ concluded that Harris did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in Appendix 1. *Id.* at 17.

The ALJ determined Harris retained the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except occasional climbing of ramps and stairs, never climbing ladders, ropes, or scaffolds, frequent balancing, occasional stooping, frequent kneeling or crouching, and occasional crawling. *Id.*  He concluded that Harris's RFC precluded him from performing any past relevant work. *Id.* at 21.

He further found that Harris – age 45 on his alleged onset date – was a younger individual with a limited education and the ability to communicate in English. *Id.*

8

Transferability of job skills was not material to the ALJ's determination of disability because he found that using the Medical-Vocational Rules as a framework supported a finding that the claimant was "not disabled." *Id.*

The ALJ also determined that, considering Harris's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Harris could have performed. *Id.* The ALJ concluded that Harris had not been under a disability, as defined in the Act, at any time from June 1, 2016, the alleged onset date, through the date of his decision. *Id.* at 22.

## II.  Law and Analysis

### A.    Scope of Review.

In considering Social Security appeals, the Court is limited by 42 U.S.C. § 405(g) to a determination of whether "substantial evidence" exists in the record to support the Commissioner's decision, and whether there were any prejudicial legal errors. *See McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. *See Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

9

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than a court. *See Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). A court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. *See Dellolio*, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

### B. <u>The ALJ properly considered the opinion of Harris's physician, Dr. Schuster, when determining Harris's RFC.</u>

Harris argues the ALJ's RFC determination was not supported by substantial evidence because he failed to properly weigh the opinion of Harris's treating physical therapist, Dr. Schuster. ECF No. 12 at 4. Citing Dr. Schuster's "Medical Source Statement," Harris contends the ALJ rejected Dr. Schuster's opinion, finding it "inconsistent with the evidence that [Harris] can perform sedentary level work." *Id.* at 4-5. Harris asserts the explanation is contrary to the rules and laws of this Circuit. *Id.* at 5.

Harris asserts new rules adopted by the SSA apply to claims filed after March 27, 2017 and modify the "rule of primacy for treating sources' opinions." *Id.* (citing

82 F.R. 5844, 5869).  Harris's claims were filed on June 6, and June 20, of 2018. Harris and the Commissioner agree that the new regulatory framework governing the evaluation of medical opinions under 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c applies to the ALJ's evaluation of Harris' claims.  ECF Nos. 12 at 4, 13 at 1. But Harris argues the ALJ failed to articulate under the new framework how persuasive he finds all of the medical opinions and all of the prior administrative medical findings in the case record. ECF No. 12 at 5.

On January 18, 2017, the SSA published revised regulations concerning how the agency considers medical opinion evidence in disability determinations.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 F.R. 5844, 2017 WL 168819 (Jan. 18, 2017).  The new regulations provide that, for claims filed on or after March 27, 2017, the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. § 416.920c(a).[2]   Rather than assigning weight to the medical opinions, the Commissioner must articulate "how persuasive" he finds the medical opinions. 20 C.F.R. § 416.920c(b).   And the Commissioner's consideration of the persuasiveness of medical opinions is guided by the following factors:  (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment

---

[2] The revised regulations did not retain the "treating source rule," which could require deference to treating source opinion evidence. *See* 20 C.F.R. § 404.1527, 20 C.F.R. § 416.927 which continue to apply to claims filed before March 27, 2017.

relationship, and the examining relationship); (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the opinion. *Id.* at § 416.920c(c)(1)-(5).

"Supportability" and "consistency" are the most important factors. *Id.* at § 416.920c(b)(2). The ALJ must explain these factors, but he need not expound on the remaining three unless he finds that two or more non-identical medical opinions are equally well-supported and consistent with the record. *Id.* at § 416.920c(b)(2)-(3).

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985); *see also Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports the decision or all the evidence that the ALJ rejected. *Falco*, 27 F.3d at 163-64. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson*, 864 F.2d at 343; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). A court "may only scrutinize the record" and consider whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

Here, the ALJ, after noting careful consideration of the entire record, found that Harris had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except occasional climbing of ramps and stairs; no climbing ladders, ropes, or scaffolds; frequent balancing; occasional stooping; frequent kneeling or crouching; and occasional crawling. ECF No. 11 at 17. He stated he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and SSR 16-3p. The ALJ also considered the medical opinions and prior administrative findings in accordance with the revised regulations 20 C.F.R. §§ 404.1520c, 416.920c. *Id.*

The ALJ summarized Harris's testimony and medical record evidence. ECF No. 11 at 18-22. He noted Harris's statements that he has an inability to lift or walk for long periods, and has reported problems with bending, squatting, standing, stair climbing, and reaching. *Id.* at 18. The ALJ observed Harris's testimony that the most he can stand is about 30 minutes before he needs to sit or lay down, and needs assistance to get out of the bed and use the bathroom. *Id.* He noted that Harris testified his pain management physician has not prescribed any medication and that he testified his doctor wants to fuse his pelvic bone to his L5. *Id.*

The ALJ observed that the medical records show X-rays of the lumbar spine conducted on November 1, 2017 and May 30, 2019 revealed degenerative changes at the L5-S1. *Id.* at 18, 350. And he observed an MRI conducted on November 30, 2017 revealed a large posterior protruded or extruded disc at L5-S1 with severe spinal

13

stenosis. *Id.* at 17, 294-95, 349.  Harris's neurosurgeon Dr. Anthony Sin evaluated him for back pain and recommended physical therapy. *Id.* at 18. The ALJ noted that after several therapy sessions, Harris reported his back had improved for short periods and that at home exercises were aggravating his pain. *Id.*  The ALJ noted that in May 2018, orthopedist Dr. Fairbanks observed that Harris had antalgic trace assisted gait, mild posterior neck pain, severe straightening of the normal lordosis, and moderate tenderness at the L4 and severe tenderness at the L5. *Id.* at 18, 357, 405-407.  Harris also had positive straight leg raise test on the right, mildly limited range of motion, and tenderness and mildly limited range of motion of his right hip. *Id.* at 18-19, 359.

Dr. Fairbanks' record further shows Harris reported his usual cervical pain level at 5 on a scale of 1 to 10, with moderate functional impairment that when present interferes only with some daily activities.  *Id.* at 357.  And Harris reported that his lumbar pain was usually 7 out of 10 with mild functional impairment that, when present, does not interfere with daily activities, except occasionally sleep. *Id.*

The ALJ examined Dr. Schuster's July 11, 2018 "Treatment Statement," which stated Harris had decreased strength bilateral lower extremities, decreased sensation to light touch with the right leg, muscle hypertrophy and trigger point tenderness spinal musculature, more prominent in the lumbar and cervical regions, and painful and limited lumbar and cervical range of motion. *Id.* at 19, 363.  The ALJ noted Dr. Schuster stated Harris made minimal improvement regarding symptoms and function with skilled physical therapy, which indicated the structural deficits of

his spine were the main contributing factors to Harris's current symptoms and limitations. *Id.*

Dr. Schuster's record noted Harris was receiving physical therapy at University Health Hospital for chronic and progressive back pain with radicular symptoms present for more than five years. *Id.* at 363. Dr. Schuster stated that physical therapy was initiated in the beginning of 2018 due to severe and progressing pain levels in his back, decreased sensation in his legs, and decreases strength. *Id.* He further opined these symptoms greatly affected his ability to work, perform activities of daily living, and concentrate during day-to-day tasks. *Id.*

Dr. Schuster stated that plain film imaging of the cervical spine showed significant degenerative changes consistent with Harris's current symptoms including radiculopathy. *Id.* Dr. Schuster noted examination and treatment revealed "decreased strength bilateral lower extremities, decreased sensation to light touch with the right leg greater than the left, muscle hypertrophy and trigger point tenderness gross spinal musculature more prominent lumber and cervical regions, painful and limited lumbar and cervical range of motion, non-pitting edema bilateral ankles and feet." *Id.* As a result, Dr. Schuster opined that Harris is unable to maintain any position, including walking and sitting, for more than 10 minutes without progressing and severe pain. *Id.* He opined that the severity of the pain affected Harris's mental capabilities and limited his ability to concentrate, focus, and effectively deal with work-related requirements. *Id.* He noted minimal improvement of symptoms and function with skilled physical therapy, which indicated structural

15

deficits of his spine were the main contributing factors to his current symptoms and limitations. *Id.*

The ALJ observed x-rays performed by the consultative examiner ("CE") Tosheiba Holmes confirmed severe degenerative disc disease of the L5-S1 with facet arthropathy and bilateral moderate hip osteoarthritis. *Id.* at 19, 381. The ALJ noted Harris was scheduled for back surgery at Avoyelles Hospital in May of 2019. *Id.* at 19. He observed Harris's combined effect of obesity on his degenerative disc disease and hypertension resulted in a severe impairment of obesity, which he considered in determined the RFC. *Id.*

Noting "careful consideration of the evidence," the ALJ found that Harris's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms. *Id.* However, the ALJ determined that Harris's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record "for the reasons explained in [his] decision." *Id.* Specifically, the ALJ observed that Harris's statements were inconsistent with the objective medical findings. *Id.*

The ALJ noted that the objective medical findings showed that on May 30, 2019, Harris reported his back pain had been stable, but was severe enough to prevent him from doing any work. *Id.* at 19, 399. But, the ALJ observed, the physical examinations were generally benign, there were no significant abnormalities seen on the non-stress test ("NST"), he had normal gait and station, and normal reflexes bilaterally with intact sensory. *Id.* at 19. A review of the record evidence shows

16

normal gait and station, normal deep tendon reflexes bilaterally, and intact sensory findings over the course of multiple examinations. *Id.* at 323-34, 326, 329, 332, 337, 346, 348, 410, 413, 416.

Record evidence on October 25, 2017, December 7, 2017, and March 6, 2018, Harris reported no weakness, no numbness, no tingling, no swelling, and no radiation down the leg or arm. *Id.* at 326, 330-332, 335. Physical exams revealed normal tone, normal range of motion, no edema, normal gait and station, normal deep tendon reflexes bilaterally, no pain with side to side bending, no pain with extension of lumbar, and mild lumbar pain when bending forward. *Id.* But Harris was able to perform full range of motion without assistance. *Id.*

The ALJ further observed the MRI of the lumbar spine revealed no spinal stenosis of the neural foramina and mild degenerative disc disease throughout the lumbar spine with loss of normal lordosis, without any facetal hypertrophy noted at any level. *Id.* at 20. Harris's medical record shows that at his May 19, 2019 neurosurgical visit, it was noted that MRI of the L5-S1 revealed degenerative disc disease with moderate central disc bulge causing thecal sac indentation at that level but no stenosis of the neural foramina, and mild degenerative disc disease throughout the lumbar spine with loss of normal lordosis without any facetal hypertrophy noted at any level. *Id.* at 400. He was referred to physical therapy for back pain and provided a list of home exercises and told to return in six months. *Id.* He was advised regarding weight loss and back strengthening exercises. *Id.*

The ALJ also noted Harris had not been prescribed a TENS unit or an assistive device for ambulation. *Id.* at 20. He took into account Harris's testimony that he was not stable to have his surgical procedure scheduled for May 30, 2019. *Id.* But he observed that Harris's hip pain was stable, that he testified he takes no current pain medication, and that medical records show recommendations of treatment with over-the-counter medications. *Id.*

The ALJ stated that he would not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings(s) or medical opinion(s), including those from Harris's "medical sources." *Id.* He explained that he fully considered the medical opinions and prior administrative medical findings. *Id.* Specifically, the ALJ explained that he found state agency medical consultant Dr. Emily Eisenhauer's ("Dr. Eisenhauer's") opinion persuasive, as the findings were reasonably consistent with the record as a whole. *Id.* The ALJ observed Dr. Eisenhauer's opinion that Harris could perform at the sedentary work level, with occasional climbing ramps and stairs, but no climbing ladders, ropes, or scaffolds, occasionally stooping and crawling, and frequently balancing, kneeling, and crouching. *Id.* at 20, 63, 74.

The ALJ further explained that he found Dr. Schuster's June 11, 2018 "Medical Source Statement" "unpersuasive," as he determined it to be "inconsistent with the evidence that the claimant could perform sedentary level work." *Id.* at 20, 365. This finding followed a discussion of the testimony and medical evidence. The ALJ observed Dr. Schuster's opinion that Harris would miss five days a month due to his

medical condition. *Id.* And he noted that Dr. Schuster stated Harris could never climb, could occasionally lift 10 pounds but no more than 20 pounds, would be off task 70 percent of an eight-hour workday, and would need to take unscheduled break periods. *Id.* at 20, 365-66. He noted that Dr. Schuster recommended that Harris receive consideration for disability and government assistance due to his chronic and progressive spinal impairments. *Id.*

The ALJ observed that the objective medical evidence suggests that Harris cannot perform less than a full range of sedentary work. *Id.* at 20. He noted Harris testified he spends his day watching television and reading, is able to use public transportation and shops for what he needs, and that he reported he takes care of himself. *Id.* After the summary of his assessment, including a discussion of the testimony, medical evidence, and persuasiveness of the medical opinions, the ALJ stated his RFC assessment that Harris can perform sedentary work is supported by Harris's partially inconsistent testimony, the medical and non-medical evidence. *Id.* The ALJ determined Harris retained the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except occasional climbing of ramps and stairs, never climbing ladders, ropes, or scaffolds, frequent balancing, occasional stooping, frequent kneeling or crouching, and occasional crawling. *Id.*

Harris contends, the ALJ provided no explanation other than stating that his opinion is "inconsistent with the evidence" that Harris "can perform sedentary level work" – a conclusory finding. *Id.* Instead, Harris argues the ALJ must explain under the new regulations how the supportability and consistency factors for a medical

source's opinion was considered. *Id.* (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

Harris further argues that caselaw under the old regulations requiring the ALJ to explain his weighing of the evidence is still relevant. *Id.* at 8. He contends Dr. Schuster's opinion is consistent with and supported by other evidence in the medical record. *Id.* at 9. Harris states that the ALJ's failure to properly weigh Dr. Schuster's opinion was harmful because the ALJ proffered limitations that would be preclusive of all work. *Id.* at 10. He further states a proper consideration of Dr. Schuster's opinion would have led to a finding of disability. *Id.* Harris argues the regulations do not contemplate the ALJ fulfilling his obligation to consider a medical opinion without explicitly discussing how he did so. ECF No. 14 at 3 (citing *William T. v. Comm'r of Soc. Sec.*, 2020 WL 6946517, at *6 (N.D. Tex. Nov. 25, 2020)).

Here, however, the ALJ properly applied the correct legal standards for assessing medical evidence for claims filed after March 17, 2017. The ALJ made a specific determination that he found Dr. Schuster's opinion unpersuasive. This is not like *William*, where the ALJ failed to even mention the treating physician's opinion in his discussion. *See William*, 2020 WL 6946517, at *6. Contrary to Harris's assertion, before discussing Dr. Schuster's medical opinion, the ALJ provided a summary of the medical evidence and explanation of his assessment of RFC. This included an analysis of the treatment notes he found inconsistent with Harris's testimony and Dr. Shuster's opinion. The regulations direct an ALJ to consider a medical opinion's persuasiveness based on how much the objective medical evidence

and medical source's explanation support the medical opinion and how consistent the medical opinion is with the evidence from other sources.  20 C.F.R. § 416.920c(c). "Supportability" denotes "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 F.R. 5844-01, 5853, 2017 WL 168819 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The ALJ's assessment satisfied this requirement.

A review of the record shows that the ALJ's RFC determination that Harris can perform the full range of sedentary work is supported by substantial evidence. Specifically, the RFC determination is supported by the objective medical evidence of record.  The ALJ provided a thorough explanation for his RFC determination and for finding Dr. Schuster's opinion unpersuasive.  The ALJ was free to assign little or no weight to Dr. Schuster's opinions inconsistent or unsupported by other evidence and incorporate only those limitations consistent with the weight of the evidence.

This Court cannot resolve conflicts of or reweigh evidence. *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016).  The Court finds the ALJ properly considered Dr. Schuster's medical opinion and that substantial evidence supports the ALJ's determination of Harris's RFC.

III.   Conclusion

Because the ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision;

IT IS RECOMMENDED that the final decision of the Commissioner is AFFIRMED, and that Harris's appeal be DENIED and DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 24th day of January, 2022.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE